UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PETER N. GEORGACARAKOS, )
)
    Plaintiff, )
) No. 06-1022 (JR)
  v. )
)
HARRELL WATTS, et al., )
)
    Defendants. )
_____)

## PLAINTIFF'S RESPONSE TO RULE 12 MOTION

In virtually every place it is not dishonest, defendants' new technicality-mongering motion to dismiss is frivolous. Plaintiff can easily correct AUSA Henault, Esquire, in his "errors," and demonstrate that according to his own assertions, this motion must be denied.

First of all, the court must take as true all the allegations in the complaint and affidavits submitted to the court, for which no counter-claims have been offered. Baker v. District of Columbia, 326 F.3d 1302, 1303 (D.C. Cir. 2003) Secondly, the

-2-

admissions in AUSA Henault's pleadings are binding. <u>National Ass'n of Life Underwriters, Inc. v. C.I.R.</u>, 30 F.3d 1526, 1530 (D.C. Cir. 1994). In other words, Plaintiff's claims <u>as stated</u> are true and if Plaintiff can satisfy the elements AUSA Henault has claimed are missing, then by the binding doctrine of <u>his own pleadings</u>, this motion must fail. The government raises three essential issues, (1) jurisdiction/venue; (2) service; (3) appropriateness of transfer to Colorado, which Plaintiff will dispatch below.

### ARGUMENT

1. <u>JURISDICTION/VENUE</u>

The Plaintiff was entitled by law to file this suit in any jurisdiction in which <u>any</u> defendant resides, as long as they do not all reside in the same state. Under <u>Klaxon Co. v. Stentor Elect. Manuf. Co</u>, 313 U.S. 487 (1941),



A sitting district court in a diversity case must apply the choice-of-law rule. For any constitutional claim to be raised, the district in which the case is filed must have <u>no significant connection whatsoever to the parties</u>, such that the choice of its substantive law is arbitrary or fundamentally unfair. <u>Cf. Allstate Insurance Co. v. Hague</u>, 449 U.S. 302, 312-13 (1981). Moreover, whereas the plaintiff has no intention of requesting a transfer of this case pursuant to 28 U.S.C. § 1404(a), this filing cannot be depicted as a "forum-shopping device." <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 633-36 (1964).

Since the defendants reside in <u>three states</u> — AUSA Henault, Esquire, conveniently forgot to mention Kansas when he argued for "convenience" — the court would not only have to find that plaintiff's right to file a suit in any jurisdiction in which a defendant resides is over-

come by the "convenience" of the defendants, but also that Colorado would also mean significant convenience for defendant Nalley, which is impossible. The Bureau of Prisons is not merely an "umbrella organization" which the defendants happen to belong to. Wiley is a warden and Nalley his superior; and Watts his superior. Each is responsible for responding to administrative remedies, which the Supreme Court has effectively given the power of law, and since this process is the *ne plus ultra* of BOP policy, to depict Watts' role as "respondeat superior" is ridiculous.

As the court may find appended hereto, Harrell Watts has had dozens of opportunities to stop the violations in this case and in every instance instead chose to actively endorse and propagate them. In fact, Watts is by far the worst and most significant offender, as a mere scan of the dates on the forms

in the appendix show — his violations extend back to 1998, are part of every claim where all other defendants are less culpable, and represent the acme of this conduct. Wardens and even Regional Directors have come and gone, while Harrell Watts has been the capstone in this conduct for nearly a decade.

As AUSA Henault, Esquire, has conceded, pursuant to 28 U.S.C. § 1391(b), only a "substantial part" of the violations must have occurred in the chosen jurisdiction. Not only is Watts the top-level and worst offender in this case, but as AUSA Henault, Esquire, must surely know, ADX prisoners are unique in the BOP in that every major decision in their status must be approved in Washington, D.C. This not only indicates a "significant part" of the case, but quite plainly means most of the records that will serve as evidence in this case are in Washington, D.C., with Harrell Watts.

What this issue <u>really</u> boils down to is simple and telling: The BOP did extensive research before building the ADX in Colorado — so they never tire of reminding us — because the court in Illinois at the jurisdiction of the previous level 6 institution, repeatedly intervened to stop exactly the same abuses now occurring at the ADX with impunity. The BOP <u>chose</u> this court as the one most likely to overlook violations, and the BOP has not been disappointed. One simple example illustrates this point cogently: When the BOP created "boxcar" cells at Marion, in which a solid door was closed outside the barred door to obstruct even the communication between prisoners in solitary confinement, the court deemed this unconstitutional for any but the most serious <u>security threats</u>. When they built the ADX, every cell was <u>permanently constructed</u> as a "boxcar" cell, <u>and</u> the outside yard required at Marion

was eliminated, AND the cells were intentionally placed to prevent prisoners from being able to see so much as a blade of grass, and so on.

      In a nutshell, it is in fact the defendants, not the plaintiff, who wish to go "forum-shopping" back to the court that has turned a blind eye for 12 years. If the defendants did not want a suit filed in the nation's capital, where the central office, the top-level violator, the longest-term offender, as well as ALL the files, analog and digital, that will be discovery, then Harrell Watts should have the obviously unlawful conduct that he was REQUIRED BY LAW to stop. These defendants chose — document after document, year after year — to lie and falsify government records and act as if the courts have never made a ruling on prison conditions and the like in 30 years, and they should not be allowed to go "forum-shopping" for a court

THEY EXPECT TO TURN A BLIND EYE. IT IS JUST THIS CONDUCT THAT ALLOWS A PLAINTIFF TO FILE IN ANY JURISDICTION OF A DEFENDANT, AND PLAINTIFF HAS CHOSEN THIS DISTRICT. SINCE NO MATTER WHERE THIS CASE PROCEEDS, PEOPLE FROM 2 DIFFERENT DISTRICTS WILL BE INCONVENIENCED, THERE IS NO JUSTIFICATION FOR COUNTERMANDING THE PLAINTIFF'S FIRST AMENDMENT RIGHT TO ACCESS THE COURTS; TO ACCESS THIS COURT.

MOREOVER, THE SIMPLEST FACT REMAINS THAT, *contra* ANSA HENAULT, ESQUIRE, MOST OF THE WITNESSES AT A TRIAL WOULD ACTUALLY BE IN WASHINGTON, D.C. WHEN PLAINTIFF WAS KEPT IN SOLITARY CONFINEMENT AFTER DISCHARGING FROM THE LAWFUL PROGRAM, IT WAS IN WASHINGTON THAT EVERY FILE RELEVANT TO THIS CASE WAS MAINTAINED — THE "THREAT GROUP" FILES, THE TRANSFER FILES, THE AUTHORIZATIONS FOR THE USE OF FORCE, THE "REVIEWS" REQUIRED AFTER SUCH, AND SO ON. THE OTHER DEFENDANTS WILL SIMPLY TAKE THE WITNESS STAND AND FEIGN IGNORANCE OR DENY EVERY-

THING; IT WILL BE THE NUMEROUS CLERKS AND DATA-PROCESSING EMPLOYEES IN BOP HEADQUARTERS WHO WILL HAVE TO PROVIDE, AUTHENTICATE, AND EXPLAIN EVERY DOCUMENT, HOW IT IS MADE, AND WHO BEARS RESPONSIBILITY FOR THE INFORMATION THEREON. THIS IS A DISTRICT OF COLUMBIA CASE BY CONSTITUTIONAL RIGHT, BY LAW, AND BY FACT.

## 2. SERVICE

AUSA HENAULT, ESQUIRE, HAS OUTDONE HIMSELF WITH THE ARGUMENT REGARDING SERVICE. HE CLAIMS THAT PLAINTIFF SERVED DEFENDANTS AT THEIR PLACE OF EMPLOYMENT — AS IF HE WOULD EVERY BE PROVIDED WITH THEIR HOME ADDRESSES. HE ALSO REFERS TO THE FACT THAT THE "ATTEMPTS" TO MAKE SUCH SERVICE WERE NOT ALL SUCCESSFUL.

THIS ARGUMENT IS SOMEWHAT IRONIC BECAUSE THE COURT ORDERED THE U.S. MARSHALLS SERVICE TO MAKE SERVICE IN THIS CASE, AND

it was that agency which decided to serve the defendants at work. Moreover, when plaintiff was informed that no address was on record for the retired defendants, he promptly motioned this court to compel the BOP to provide these to the Marshalls. This motion is, as far as plaintiff is aware, still pending. If AUSA Henault, Esquire, wishes to provide plaintiff with the home address of these offenders, which is welcome, he will promptly ensure that they are served.

### 3. TRANSFER OF VENUE

On pages 8 & 9 of his motion, AUSA Henault, Esquire, lists the six factors the court must consider in deciding such an issue, and plaintiff asserts that all of the above satisfies all but #2, convenience of defendants; and no matter where this case is prosecuted — it bears repeating — defendants will be

IN TWO OTHER DISTRICTS, AND THUS THIS FACTOR SHOULD HAVE THE LEAST IMPACT HERE. THE OTHER FIVE ARE UNAMBIGUOUSLY SATISFIED: (1) PLAINTIFF'S CHOICE — THIS SHOULD BE PRIMARY; (3) DISTRICT WHERE CLAIMS AROSE — IT IS WATTS AND ONLY WATTS WHO IS IMPLICATED IN EVERY VIOLATION, AND WAS THE TOP-LEVEL OFFICER WHILE OTHERS CAME AND WENT, ALL ADX DECISIONS MUST BE MADE IN D.C., AND ALL RELEVANT FILES ARE IN D.C.; (4) CONVENIENCE OF PARTIES — IT IS TRUE THAT MOST DEFENDANTS ARE IN THE DISTRICT OF COLORADO, BUT SEVERAL OF THEM ARE RELATIVELY MINOR PARTICIPANTS IN THE VIOLATIONS. ALL OF THEIR CLAIMS COMBINED WILL NOT EQUAL JUST THOSE AGAINST WATTS! SO IN REALITY, EVEN IF THE COURT WERE TO HOLD DEFENDANTS' FORUM-SHOPPING AS EQUAL TO PLAINTIFF'S CONSTITUTIONAL CHOICE OF JURISDICTION — AND IT SHOULD NOT — THE DISTRICT OF COLUMBIA WOULD WIN: ALL DEFENDANTS EXCEPT WILEY, NALLEY, AND WATTS WOULD ALMOST CERTAINLY BE REQUIRED TO

MAKE JUST ONE DAY'S APPEARANCE TO TESTIFY, WHILE WATTS AND NUMEROUS CLERKS FROM BOP HEADQUARTERS WILL CONSTITUTE MOST OF THE TRIAL; (5) CONVENIENCE OF WITNESSES — ALMOST ALL PLAINTIFF'S WITNESSES WORK AT BOP HQ, FILING AND MAINTAINING THE DOCUMENTS THAT HAVE BEEN FALSIFIED ALL THESE YEARS; EVERY POLICY AND REGULATION WILL ULTIMATELY BE ATTESTED BY THE BOSSES IN D.C., NOT THE OFFICERS IN COLORADO. IN FACT, PLAINTIFF CAN SPECULATE THAT 85-90% OF HIS ENTIRE CASE WILL BE BASED ON DOCUMENTS, ALL OF THEM KEPT BY DEPARTMENTS IN THE CAPITAL; (6) ACCESS TO PROOF SOURCES — ANSWERED.

## CONCLUSION

AUSA HENAULT, ESQUIRE, MAY BELITTLE THE CLAIMS IN THIS CASE BUT EACH IS BLATANT, IN TOTAL DISREGARD OF RELEVANT REGULATIONS, AND PROHIBITED BY THE COURTS. THE SUPREME COURT JUST RECENTLY PROHIBITED EVERYTHING THE DEF-

-13-

ENDWB ARE DOING, IN <u>AUSTIN V. WILKINSON</u>, 545 U.S. ___. AS PLAINTIFF HAS POINTED OUT REPEATEDLY, THE DISCRIMINATION OF THE <u>BOP</u> IS ALSO A WELL-DOCUMENTED FACT, ALSO PARTLY BEING REVIEWED BY THE THIRD CIRCUIT AT THIS TIME. THE WHOLE POINT OF <u>CLAIM 2</u> IS THAT PLAINTIFF DOES <u>NOT</u> HAVE "DEPRESSIVE TENDENCIES," OR ANYTHING REMOTELY SIMILAR, BUT SINCE 2003 HAS HAD TO TAKE STRONGER AND STRONGER, MORE AND MORE PSYCHOTROPIC DRUGS BECAUSE THE COURTS HAVE RECOGNIZED TIME AND AGAIN, <u>SOLITARY CONFINEMENT CAN BE CRUEL AND UNUSUAL WHEN USED BEYOND THE REQUIREMENTS OF SECURITY.</u>

THE PLAINTIFF IS <u>PHYSIOLOGICALLY</u> ILL BECAUSE THE DEFENDANTS DO NOT THINK <u>ANY</u> REGULATION, LAW, OR COURT CAN DICTATE THEIR ACTIONS. HE IS ON <u>THREE</u> MEDICATIONS, ANY <u>ONE</u> OF WHICH CAN CAUSE BRAIN DAMAGE WHEN USED FOR LONG PERIODS, NOT BECAUSE HE IS "MELANCHOLY" BUT BECAUSE WITHOUT THEM HE CANNOT SLEEP, SEE WITHOUT DISTRACTING



visual hallucinations in his peripheral vision, or escape a loud buzzing in his ears. He is not "sad", his brain is malfunctioning because no human can spend more than 18 months in solitary confinement without serious deleterious effects resembling schizophrenia, and he has been treated thus for 10.5 years, and cannot even hope to be released in less than four more, at which time he will be nearly blind, nearly deaf, and with structural damaged caused both by the ignored physiology and the drugs to treat the brain while ignoring the cause.

Alexa Hennult, Esquire, may smugly talk of "litigation for sport" and the like, but if it was not unconstitutional to keep a person in solitary confinement without an iota of due process worse than that, due to his religion; if it was not criminal to cause a prisoner's schizoid functions then medicate them rather than stop causing them, then all the

RULES THAT THE DEFENDANTS CLAIM NOT TO BE BOUND BY, WOULD NOT EXIST. THE MAXIMUM SOLITARY CONFINEMENT WOULD NOT BE 5 YEARS———— FOR PREMEDITATED MURDER———— IF IT WAS FINE TO KEEP A MAN IN TWICE THAT LONG BASED ON HIS RELIGION. MEN WHO UNLIKE THE PLAINTIFF, DO HAVE A HISTORY OF MENTAL DISORDER, ARE DYING HERE WHILE ALSA MEWULT, ESQUIRE MOCKS THESE CLAIMS, FOR EXAMPLE PRETENDING THAT PLAINTIFF HAS CLAIMED THAT THE DEFENDANTS ALTERED THE WAY THE ADX IS RUN JUST TO STOP HIM FROM LEAVING, WHEN HE CLEARLY SAID THAT HE WAS KEPT HERE IN 2003 BASED ON RELIGION, AND THEN THE DEFENDANTS TURNED ALL ADX UNITS INTO SOLITARY CONFINEMENT IN 2005 BUT LEFT THE NAME "GENERAL POPULATION" ON THE DOOR IN ORDER TO BYPASS THE DUE PROCESS DUE ALL PRISONERS NOT SANCTIONED TO SOLITARY CONFINEMENT. THE CODE OF FEDERAL REGULATIONS AND BOP PROGRAM STATEMENTS SPECIFICALLY AND REPEATEDLY PROHIBIT MEDICATING A PRISONER

WITH PSYCHOTROPIC DRUGS, IF THE CAUSE OF THE PROBLEM IS ISOLATION, WHILE LEAVING HIM IN THAT ISOLATION. THE COURTS HAVE RULED ON THIS MENTAL HEALTH ISSUE ALL ACROSS AMERICA OVER THE PAST TEN YEARS, BUT XNSA MEN- AULT REDUCES THE ISSUE TO THE PLAINTIFF'S "DEPRESSIVE TENDENCIES" HE IS OBVIOUSLY ANOTHER BUREAUCRATIC CREEPING COWARD WHO ENJOYS, AS DO THE DEFENDANTS, DESTROYING A MANS LIFE THEN MOCKING HIM FROM BEHIND TWO DOORS. FINE — THIS COUNTRY IS FULL OF COWARDS — BUT PLAINTIFF WILL NOT BE MOCKED LIGHTLY BY ANYONE WHO WOULD NEVER UNDER ANY CIRCUMSTANCES TRY THIS IN HIS PRESENCE.

EVEN IF THE COURT WERE TO WINK AND PRETEND TO BELIEVE ANYTHING THE DEFENDANTS HAVE STATED SO FAR IS NOT ONLY NOT FRIVOLOUS BUT NOT IN BAD FAITH, A MOTION TO DISMISS UNDER RULE 12(b), AND ESPECIALLY A MOTION CITING JURISDICTIONAL DEF- ECT ARGUMENTS, REQUIRES A PREL- IMINARY HEARING TO DETERMINE

THE DISPUTE FACTS UPON WHICH THE MOTION OR OPPOSITION TO IT ARE PREDICATED, F.R.C.P. 12(b)(1)(d). THE COURT OWES THE DEFENDANTS DEFERENCE IN THE FIELD OF AGENCY ACTION, NOT IN MATTERS OF THEIR LITIGATION POSITIONS, WHICH ARE ALL THIS COURT HAS RECEIVED. FED. LABOR REL. AUTHORITY V. U.S. DEPT. OF TREASURY, 884 F.2d 1446, 1455 (D.C. CIR. 1989).

WHEREFORE, PLAINTIFF RESPECTFULLY REQUESTS THIS COURT TO DENY THIS MOTION AS FRIVOLOUS AND IN BAD FAITH AND ORDER THE DEFENDANTS TO RESPOND TO THIS COMPLAINT FORTHWITH.

DATE: 3/21/07

RESPECTFULLY SUBMITTED,

*[signature]*
PETER N. GEORGACARAKOS